JANUARY TERM, 1883, No. 156.                    APRIL 30, 1883.

## Churchman *et al.*, Ex'rs, *v.* Wright *et al.*, Admr's.

A tenant in common of timber land authorized his executors to sell the land whenever they should think it would bring its real value. After his death his executors had the timber cut and sold, and they received the proceeds. *Held:* That the power of sale worked a conversion of the realty to personalty and gave the executors full authority to dispose of it.

*Held* further : That they were liable as executors to the co-tenants of the testator for the proportion of the latter in such proceeds and that the co-tenants were not obliged to look to them as individuals.

Before GORDON, PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ.; MERCUR, C. J., absent.

Error to the Common Pleas of *Clearfield County.*

*Assumpsit* by W. V. Wright and William Porter, administrators of the estate of John W. Wright, deceased, against George Churchman and Caleb Churchman, executors of the last will and testament of George W. Churchman, deceased, to recover one half the value of certain timber cut upon the common property of Wright and Churchman in Clearfield county.

At the trial before ORVIS, A. L. J., November 14, 1882, the plaintiff gave evidence of the following facts:

On December 6, 1866, Thomas Henderson and others sold to George W. Churchman and A. K. Wright, W. V. Wright, and J. W. Wright about five hundred and fifty acres of timber land in Clearfield county, which they held as tenants in common, Churchman having one-half interest and the Wrights one-half interest therein. At the time the suit was brought, the Wright interest was vested in W. V. Wright and the heirs of his brother, J. W. Wright. George W. Churchman died before suit was brought, leaving a will of which he appointed George Churchman and Caleb Churchman his executors, and in which, after making disposition of other real estate than

the Clearfield land, he devised as follows: "I will all my other real estate and personal property to be sold whenever my executors may think it will bring its real value."

Before Churchman's death, the land was used "for taking off square timber." After his death, the executors used the land just as before. In 1874, George and Caleb Churchman rendered an account to the Wrights, showing a balance due to the Wrights of $4,283 95. It was headed "C. and G. Churchman, executors," and was in the handwriting of George Churchman.

Five rafts were made off this land in the winter of 1874–5. Churchman took possession of this timber and never rendered any account of it. He made an agreement with one Kline to take out the timber for 1875.

The defendants offered in evidence the will of George W. Churchman, but no further testimony.

The Court charged the jury as follows:

"This is an action brought by W. V. Wright and William Porter, the administrators of J. W. Wright, deceased, against the executors of George W. Churchman, deceased, to recover a balance alleged to be due by that estate to the plaintiffs. [There is no question of fact in dispute in the case. The plaintiffs' claim is admitted by the defendants to be correct, but the question which arises in the case is a question of law for the Court to decide, which is whether or not the executors of George W. Churchman, deceased, whether the estate of the deceased is liable for this claim, or whether George Churchman and Caleb Churchman are liable individually, and not as executors of George W. Churchman, deceased. That is the real question in this case, and for the purpose of this suit we will instruct you, gentlemen of the jury, to find for the plaintiffs the fact that this land referred to in this suit, having been purchased for lumbering purposes before the death of George W. Churchman, although not operated until after the death of George W. Churchman by his executors, the estate is bound by their acts and the Wrights would be entitled to recover the amount you find due under all the evidence in the case, and your verdict should be for the plaintiffs for that amount, with interest from the time it was due.]"

Verdict for plaintiffs for $11,771 69, and judgment thereon.

The defendants thereupon took this writ, assigning for error the portion of the charge in brackets above, and the action of the Court in not submitting to the jury the question of fact as to how much, if anything, was due to

[Churchman *et al.*, Ex'rs, *v.* Wright *et al.*, Admr's.]

the plaintiffs from the defendants upon the evidence in the case.

*Murray & Gordon, Hood Gilpin,* and *Charles Gilpin* for plaintiffs in error.

The will of George W. Churchman gave his executors authority to sell the lands in Clearfield county, but no authority to buy from the Wrights the interest of the Wrights in the timber cut upon the land and delivered by the Wrights to the plaintiffs in error, and charge the estate of George W. Churchman, deceased, with the value of that timber so delivered. The plaintiffs in error, who are two of the heirs of G. W. Churchman, deceased, might act individually or as agents for the Wrights, who are their co-tenants in common, but cannot bind the estate of George W. Churchman, because there is no power in the will from which such an authority could be implied: Brush *v.* Ware, 15 Peters, 111; Williams on Executors, 1, 717, 6th Am. Ed.

Unless the executor is authorized by the will or statute, he can do nothing with regard to testator's real estate; nor can he, unless so authorized, do any act in respect to the personal estate to take the same out of the ordinary course of distribution; Chew *v.* Chew, 4 Casey, 17; Ross *v.* Barclay, 6 H., 179; Waters *v.* Margerum, 10 Sm., 39; Oeslager *v.* Fisher, 2 Barr, 467.

*Wallace & Krebs* for defendants in error.

When a will contains an absolute direction to executors to sell, it vests the legal estate in them, *virtute officio,* and so long as they remain executors, they can deal with it in no other capacity but as executors.

We contend that under the will the executors had power to deal with the timber as they did, and were liable to account to their co-tenants as executors and not as individuals, because

*First.* The will, by its express direction, works conversion of the real estate into personalty.

*Secondly.* It was manifestly to the interest of the estate that this timber should be cut and sold.

*Thirdly.* This will is equivalent to a devise to the executors of the property, real and personal, for the purpose of sale and conveyance: Shippen's Heirs *v.* Clapp, 4 Casey, 265.

It broke the descent, and vests the legal estate in the executors: Miller *v.* Meetch, 8 Barr, 425; Allison *v.* Wilson, 13 S. & R., 332; Morrow *v.* Brenizer, 2 R., 185;

[Churchman *et al.*, Ex'rs, *v.* Wright *et al.*, Admr's.]

Allison *v.* Kurtz, 2 Watts, 185 ; Dundas' Appeal, 14 Sm., 330.

*Gilpin* in reply :

The argument for defendants in error seeks to establish the fact that the power given to the executors of G. W. Churchman worked a conversion of the real estate, and that they could deal with it in no other way than as executors. That there was a conversion does not help the case of the defendants in error, for it was only Churchman's interest which was converted, not the Wrights'. To the Wrights, they are accountable as agents ; to the Churchman heirs, they are accountable as executors : Seip *v.* Drach, 2 Harris, 352.

MAY 21, 1883.—PER CURIAM : The will of George W. Churchman provided for the sale of the real estate, from which the timber, which forms the subject of the present controversy, was taken, whenever his executors should think it would bring its real value. This direction not only worked a conversion of the realty, but also gave the executors the full power to dispose of it, and this power they were to exercise in such a way as to realize the greatest sum possible from the property committed to their care. Now, as the lands were timbered and unim- proved, and as they were held with tenants in common, the executors seemed to think, and in this they were doubtless right, that the largest amount could be realized from them by having the timber manufactured and put into the market. Had this timber, at the time of the tes- tator's death, been cut down and lying in the woods, I suppose that no one would contend that the executors had not the power to contract with the tenants in com- mon, or others, to manufacture and market it. But as the whole property in their hands was, in effect, but per- sonalty, we can see no good reason why they could not so contract to have it taken from the stump, manufactured, and marketed. As to the remaining assignments, we have but to say, that they complain of the Court for not doing just what it did do. The Court did submit the evi- dence to the jury, and told them that the Wrights would be entitled to recover the amount they might find to be due them, under all the evidence of the case.

The judgment is affirmed.